Jules GARRISON, Appellant,

v.

WARNER BROTHERS PICTURES, Inc.,
a corporation, Appellee.

No. 14316.

United States Court of Appeals
Ninth Circuit.

Oct. 3, 1955.

Morris Lavine, Los Angeles, Cal., for appellant.

Freston & Files, Eugene D. Williams, Gordon L. Files, Ralph E. Lewis, Los Angeles, Cal., for appellee.

Before STEPHENS and FEE, Circuit Judges, and WIIG, District Judge.

WIIG, District Judge.

Garrison appeals from an adverse judgment in his action for breach of contract against Warner Brothers Pictures, Inc., a corporation. Trial was had before the district court, sitting without a jury, and judgment was entered based upon the court's findings of fact and conclusions of law.

The breach of contract was predicated on offers made by Warner Brothers, through the media of a newsreel and newspaper stories, that it would pay $1,000,000 to anyone who could prove that actor Burt Lancaster, the star of a motion picture entitled "The Flame and the Arrow," did not perform all the daring stunts he was shown doing in the motion picture. Garrison saw the newsreel and the motion picture. He then had two telephone conversations with an attorney for the corporation. In the first conversation he told the attorney he "felt sure," "thought," or "believed" he could prove that Lancaster had not done all of the stunts in the picture. Three days later, Garrison told the attorney he could prove his claim. (No effort, however, was made to prove it until the trial of the action, about three years later.) Garrison, a resident of Los Angeles, California, also told the attorney that if he would "arrange for Warner Brothers to buy me a ticket to New York and a suit of clothes and some change to put in my pocket I will go to New York" and "forget about it." The attorney told Garrison it was his position that no offer had been made but that if Garrison thought one had been made it was withdrawn. Later, Garrison, through his own attorney, wrote Warner Brothers that Garrison had accepted the offer and had given proof that Lancaster "did not do all of the stunts he is shown doing in the picture."

■ The illusory offer apparently confounded Garrison's trial attorney. The complaint alleged, among other things, that Warner Brothers offered to pay the sum of money to anyone who could prove Lancaster "did not do or perform all of the stunts he was shown doing or *purported to perform*" in the motion picture. (Emphasis supplied.) A careful examination of the record fails to reveal any evidence in support of the making of an offer in the words or language alleged in the complaint. The trial court's finding that no offer as set forth in the complaint was ever made was clearly correct.

■■ If a bona fide offer is made and is accepted within a reasonable time without conditions and without varying its terms, a contract may arise. There can be no contract if the offer is revoked before a valid acceptance. The evidence showed that Garrison never performed acts which would have constituted an unqualified acceptance of the alleged offer. At the most, he indicated only that he thought he could prove Lancaster did not do all the daring stunts shown in the motion picture.

■ Garrison urges that the attempt to revoke the offer by direct communication with him was ineffectual because the revocation must have been made by the same means as used in making the offer—newsreels and newspapers. This unique contention is not supported by any authority or reason. As to the remaining members of the public, the same media would have to be used in order to revoke the offer, but as to Garrison, direct personal notice that it had been withdrawn was sufficient.

■ In connection with the issue as to whether Lancaster performed all his daring stunts in the motion picture, Garrison proved that in three episodes a substitute actor appeared in the film portraying the character played by Lancaster. By the use of trick photography in a scene wherein this character was shown carrying a young boy along the crest of a roof, it would appear to a viewing audience that the action was daring or dangerous. However, in the motion picture set, a platform two feet wide was erected behind the false front of the building. Approximately four feet below that platform, there was an-

other platform three feet wide protected by a hand rail three and a half feet high. None of this, of course, was shown in the film, but it was along the upper platform that the actor actually ran carrying the youth. In the second episode, the substitute actor entered a courtyard on horseback, came to a stop, stepped down to the bed of a stationary two-wheel cart, cut a rope by which another character was suspended, and then drove the horse pulling the cart away from the courtyard. In a sword fight or duel, two short views showed the arm and shoulder of the substitute actor. To the audience, the action portrayed actual combat. This illusion was dispelled by testimony of a fencing instructor, who described himself as a "motion picture choreographer of fencing," to the effect that all the action was laid out, memorized and practiced in advance in the same manner as the choreography of a ballet. The trial court found that the foregoing did not constitute stunts. We have viewed the film and examined the record, and affirm the trial court's finding in this respect.

Garrison urges that the picture itself defined the term "stunt" and what is daring or dangerous through its representation to the public that what the public saw on the screen was real. Warner Brothers answers by saying: "This disregards entirely the fact that any motion picture in its entirety is an illusion," and adds that: "* * * what constitutes a 'daring stunt' cannot be tested by the apparent danger created through the ordinary practices of the dramatic acts." We accept the answer.

Before trial, Garrison filed a request for admissions pursuant to Rule 36, Federal Rules of Civil Procedure, 28 U.S. C.A. Warner Brothers, in its answer filed ten days later, denied one of the requests, the denial being based on the information furnished counsel for the corporation at that time. A year and a half before trial, more information was developed during the taking of Lancaster's deposition, and it was learned that the denial of the admission was in error.

Garrison's attorney was then apprised of the truth as to this portion of the testimony which he proposed to offer during the trial.

In an affidavit in opposition to Garrison's motion for an order requiring payment of attorney's fees and costs pursuant to Rule 37(c), Federal Rules of Civil Procedure, Warner Brothers' counsel admitted the error but set forth facts showing that an honest and concerted effort had been made prior to filing the answer to secure all available information concerning the request, and that the denial was made in the belief that it was accurate. Under the circumstances, the trial court did not err in denying the motion for attorney's fees and costs.

The judgment is affirmed.