Filed 1/24/14  Martinez v. Neema CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ANDY W. MARTINEZ,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>FRANCOIS NEEMA,<br><br>        Defendant and Appellant. | A133116, A134475, A134790<br><br>(Sonoma County<br>Super. Ct. No. SCV-246810) |

## I. INTRODUCTION

In these three consolidated appeals, two men, both of whom had previously dated the same woman and later allegedly became involved in offensive e-mails, appeal from different orders of the Sonoma County Superior Court.  Plaintiff Martinez, appearing in pro per, appeals from that court's (1) grant of summary judgment to defendant Neema from Martinez's first amended complaint alleging libel, libel per se, abuse of process, intentional infliction of emotional distress, and conspiracy and (2) subsequent order imposing sanctions on him.  Neema appeals from (3) the trial court's order denying him further sanctions against Martinez.

We affirm the trial court's grant of summary judgment against Martinez and in favor of Neema, and also both of its orders regarding the award of sanctions.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Martinez is a resident of Los Angeles County.  Defendant Neema is a resident of Sonoma County.  The woman they were both once allegedly involved with, Kimberly Doane, was apparently a resident of Marin County.

1

In his first amended complaint filed on April 13, 2010, Martinez—there, as here, acting in pro per—alleged 18 causes of action against Neema. The basis of all of them was his charge that Neema created false Yahoo e-mail accounts using Martinez's name and, via them, sent e-mails to Doane, e-mails that were allegedly intended to interfere with Doane's "attempt to reconcile" with her estranged husband. That complaint further alleged, via many different causes of action, that the dispatch of these e-mails led Doane to seek and secure a temporary restraining order against Martinez subjecting "Plaintiff [i.e., Martinez] to civil action," for which he sought awards of damages and punitive damages from Neema.

Martinez and Neema engaged in more than a year of discovery and related litigation. For example, Neema requested that Martinez admit that Neema did not in fact create the Yahoo e-mail accounts or send Doane any e-mails using Martinez's name as the purported author; Martinez denied those requests.

On April 1, 2011,[1] Neema filed a motion for summary judgment, which was set for hearing on June 21. On June 7, Martinez filed an opposition to that motion, an opposition which included numerous evidentiary objections, but no declaration pursuant to Code of Civil Procedure section 437c, subdivision (h).[2] On June 16, Neema filed his reply papers in support of his summary judgment motion, papers which included his reply to Martinez's evidentiary objections and his own similar objections.

On June 22, one day in advance of a continued hearing date, the trial court (the Honorable Patrick Broderick) issued a tentative ruling granting Neema's motion for summary judgment.

Although Martinez had not made a timely request for oral argument on Neema's summary judgment motion, he claimed he misunderstood the required procedure for doing so, and moved the trial court to hear oral argument, which it agreed to do.

---

[1] Unless otherwise stated, all further dates noted are in 2011.

[2] Hereafter, section 437c(h); unless otherwise noted, all further statutory citations are to the Code of Civil Procedure.

2

On July 7 and 11, respectively, Martinez filed motions (1) to introduce oral evidence at the hearing and (2) for leave of the court to amend his pleadings before any hearing on Neema's summary judgment motion. A hearing on the motion for summary judgment was held on July 12.

Via a formal order filed on July 25, the trial court denied both of Martinez's motions as untimely, and also ruled on the evidentiary objections of the parties and Martinez's request for judicial notice. It then upheld its June 22 tentative ruling. In so doing, the court stated: "Even if all of Plaintiff's evidence is considered, as well as the documents for which Plaintiff seeks judicial notice, there is insufficient evidence to show that Defendant Francois Neema was involved in any way with the e-mails at issue in this lawsuit. It can be argued that the evidence seems to show that Defendant Mark Quesenberry was the person impersonating Plaintiff. However, the evidence shows no connection between Defendant and the phony e-mails and no conspiracy between Defendant Neema and Defendant Mark Quesenberry.[3] There are no properly drawn inferences from the evidence which create any triable issues of material fact for either of those claims."

The court thus granted Neema's motion for summary judgment; a formal judgment in his favor was entered on August 17.

A few days before that, however, Martinez filed a motion for reconsideration; a hearing thereon was set for October 11. On September 2, he filed a notice of appeal from the trial court's August 17 judgment. On September 27, Neema filed his opposition to Martinez's motion for reconsideration. The trial court denied that motion on November 28 on the basis that the motion set forth no new facts or law supporting it.

After the trial court's grant of summary judgment, on October 3 it entered an order allowing plaintiff Martinez to file a second amended complaint, but specifically to do so as to *other parties*. He was directed not to allege "any claim related to phony e-mails

---

[3] Quesenberry was added as a defendant to the action sometime after the filing of the first amended complaint, but is not a party to this appeal.

against Defendant Francois Neema because that matter has been adjudicated, and any claim related to phony e-mails is barred as to Defendant Neema by the doctrines of res judicata and collateral estoppel." Nonetheless, Martinez did include Neema as a defendant in his second amended complaint and, after a hearing on December 1, the trial court ordered Martinez to pay Neema sanctions in the amount of Neema's costs and attorney fees "incurred as a result of having to respond" to that second amended complaint. On February 27, 2012, the court entered an order awarding Neema attorney fees and costs in the amount of $5,155.15, an amount consistent with Neema's earlier applications for such.

On March 5, 2012, Martinez filed a notice of appeal from this order.

In the meantime, on September 14, Neema had filed a motion for sanctions against Martinez for the latter's failure to admit in the course of discovery that Neema was not involved in the phony e-mails that had been sent to Doane. Martinez opposed this motion on November 17, and Neema replied to this opposition on November 21. On December 15, the trial court denied that motion.

On January 31, 2012, Neema filed a notice of appeal from that order. (5 CT 856.)

On March 20, 2012, this court issued an order consolidating all three of these appeals.

### III. DISCUSSION

A.  *The Trial Court's Grant of Summary Judgment to Neema Was Proper*

We will deal first with the trial court's grant of summary judgment in favor of Neema. Under the de novo standard of review applicable to such rulings (see, e.g., *Kasparian v. AvalonBay Communities, Inc.* (2007) 156 Cal.App.4th 11, 24), we have no problem affirming this ruling. That is so principally because Martinez has provided no factual record in either his five-volume appellant's appendix (nor is there any in the clerk's transcript apparently ordered by Neema) which establishes that there was any factual evidence overlooked by the trial court which proved—or for that matter even suggested—that Neema was the author of the e-mails sent to Doane.

4

In arguing that there was, Martinez has supplied this court with briefs which (1) contain few if any citations to the record provided us, (2) suggest that the record contains factual material for which no citations are provided, and (3) omit many key procedural and substantive facts from the record, matters which are contained in the clerk's transcript and a respondent's appendix supplied by Neema.

The law is clear that an in pro per party to an appeal is not entitled to any "preferential consideration" but, rather, " 'is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys.' [Citation.]" (*First American Title Co. v. Mirzaian* (2003) 108 Cal.App.4th 956, 958, fn. 1, and cases cited therein.) Pursuant to this law we will analyze the arguments presented by both parties in these consolidated appeals under these same standards.

In his brief to us,[4] Martinez devotes almost half of it to a recitation of the procedural facts underlying these appeals. He then summarizes the merits of his case thusly: "[T]his is a case clearly with merit, with evidence of tortious acts on behalf of Defendant Neema and fellow conspirators that involved fraudulent impersonations, hidden identities, and manipulative behavior, a case in which new evidence was still being discovered and new parties being added when the motion [for summary judgment] was filed."

Martinez then cites, and relies upon for several pages in his brief, the decision of one of our sister courts in *Bahl v. Bank of America* (2001) 89 Cal.App.4th 389 (*Bahl*), in arguing that, here, the trial court erred in not granting him a further continuance to produce additional evidence in support of his opposition to Neema's motion for summary judgment. Indeed, the trial court's denial of further continuances to Martinez regarding his opposition to Neema's motion for summary judgment in this (then) over one-year-old case, is a principal ground for Martinez's appeal.

In *Bahl, supra,* 89 Cal.App.4th 389, the court reversed a grant of summary judgment rendered by the trial court in favor of the defendant because, principally, the

---

[4] Martinez addresses all three appeals in his one brief to us.

trial court denied the opposing party's request for a continuance to adduce additional evidence in opposition. *Bahl*, however, does not aid Martinez. First of all, it was decided before the 2002 amendments to section 437c, amendments which enlarged the time to file an opposition to a motion for summary judgment from 28 to 75 days. (See § 437c, subd. (a).) On that basis alone, it has been effectively distinguished by at least one later decision. (See *Cooksey v. Alexakis* (2004) 123 Cal.App.4th 246, 260.)

Second, a trial court's decision *not* to grant a continuance under section 437c(h) is reviewed for abuse of discretion. (See *Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 100-102.) Particularly in view of the liberality shown Martinez by the trial court,[5] it is difficult if not impossible to find such an abuse here.

Third, in *Bahl* the opposing party supported his request for a continuance with a declaration under section 437c(h),[6] which Martinez failed to do here. (See *Bahl, supra,* 89 Cal.App.4th at pp. 393 & 398.) The reason such a declaration is required is for the party to " 'show that its proposed discovery would have led to "facts essential to justify opposition." ' " (*Scott v. CIBA Vision Corp.* (1995) 38 Cal.App.4th 307, 325-326.) As a leading treatise has noted, this means that a party seeking a continuance must meet several specific requirements. (See Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2013) ¶ 10:207.15, p. 10-88, and cases cited therein.) Martinez clearly did not do so here.

Fourth and probably most importantly, as our colleagues in the Third District wrote regarding *Bahl*: "Plaintiff relies on *Bahl*[*, supra,*] 89 Cal.App.4th 389, arguing that a continuance is 'virtually mandated upon a good faith showing that a continuance is necessary to obtain facts essential to justify opposition' to a summary judgment motion.

---

[5] For example (1) its grant to Martinez of oral argument, although such had not been timely requested by him, and (2) its grant to him of leave to file a second amended complaint against defendants other than Neema.

[6] Section 437c(h) provides that as and when affidavits are submitted showing "that facts essential to justify opposition may exist but cannot, for reasons stated, then be presented," the court shall either deny the summary judgment motion or grant a continuance to permit such evidence to be obtained. (§ 437c(h).)

6

Plaintiff is correct that *Bahl* made that observation. For the purpose of this opinion, we need not decide whether it is correct; for assuming that it is, the court's observation does not aid plaintiff here. The virtual mandate to which plaintiff refers presupposes a good faith showing that there are facts in opposition that may exist and a good faith showing why those facts could not have been presented at the time of the hearing. Plaintiff has made neither showing here, and the motion to continue was properly denied." (*Bushling v. Fremont Medical Center* (2004) 117 Cal.App.4th 493, 512.)

Precisely the same principle applies here: despite his voluminous pleadings in the trial court, as that court found, Martinez presented no credible evidence to it showing that Neema was (or was very likely) the author of the "phony" e-mails sent to Doane.

First of all, Martinez had, during the course of the year-plus discovery, requested information on Neema's geographic locations when the "phony" e-mails were sent to Doane. Neema supplied that information via responses to interrogatories, documents he produced, and a declaration.

Although, in his deposition, Martinez stated that he had evidence which placed former co-defendant Quesenberry at or near some of those locations, he conceded that his discovery had produced no such evidence as to Neema. Indeed, in his deposition answers to seven separate and distinct questions posed to him by Neema's counsel, Martinez answered "No" or "Correct" to all of them, thus effectively confirming that he had no evidence linking Neema to the fake Yahoo e-mails to Doane. And he also conceded that he could not and did not challenge the authenticity of any of the documents produced by Neema during the course of the extensive discovery in the litigation.

Additionally, Neema's filings during the course of that discovery made clear that he did not know and had never met Quesenberry. Absolutely nothing in the over 500 hundred pages of documents filed by Martinez in the trial court is cited by him as contradicting any of these important premises supporting the trial court's ruling.

Indeed, about the only specific item of proffered evidence cited by Martinez in support of his claim that Neema (an individual with some sort of a French heritage) was the author of the "phony" Yahoo e-mails to Doane was a declaration by an alleged

7

linguistics expert from New York, one Robert Leonard. That individual opined that, after reviewing those e-mails, he had concluded that it was a reasonable "hypothesis" that someone with a French heritage might have been the author of the e-mails, i.e., that "the distribution of the language data" suggests that such a "hypothesis" was superior to a negative hypothesis regarding such a connection. The trial court correctly concluded that this declaration was inadmissible because it was made in New York and did not state that it was made pursuant to the laws of California. (See §§ 2013 & 2015.5 and *Kulshrestha v. First Union Commercial Corp.* (2004) 33 Cal.4th 601, 609-612.)

Beyond this, the only other evidence Martinez claims to have presented to the trial court in support of his claim that Neema was the alleged author of the e-mails to Doane were stated in his answers to Neema's interrogatories. But all these statements did was suggest that (1) Neema and Quesenberry possibly knew each other (a fact specifically denied by Neema as noted above), (2) contrary to Neema's sworn statements, Martinez believed that Neema in fact had sent the e-mails and used a PDA, smart phone, or laptop, and (3) both Neema and Quesenberry had dated Doane in the past.

However, clearly all of this in no way amounts to credible evidence that Neema was the author of the e-mails sent to Doane. At the most, it consists of theories and arguable inferences that might be drawn from the evidence presented by Martinez. But the law is clear that if only "inferences" are produced by a party opposing a motion for summary judgment, "those inferences must be reasonably deducible from the evidence, and not such as are derived from speculation, conjecture, imagination, or guesswork." (*Joseph E. Di Loreto, Inc. v. O'Neill* (1991) 1 Cal.App.4th 149, 161; see also *Annod Corp. v. Hamilton & Samuels* (2002) 100 Cal.App.4th 1286, 1298-1299 and *Waschek v. Department of Motor Vehicles* (1997) 59 Cal.App.4th 640, 647.) As our Supreme Court has made clear: "Speculation . . . is not evidence." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 864.)

However, and very clearly, *possible* inferences based on speculation are all that Martinez can and does cite in his opposition to Neema's motion for summary judgment. Such is clearly inadequate: when a party moving for summary judgment is confronted

8

with an opposition which lacks supporting factual evidence, that party may argue that absence of evidence-based opposition in support of its motion. The party opposing the grant of summary judgment must then " 'set forth specific facts showing that there is a genuine issue for trial.' " (*Hunter v. Pacific Mechanical Corp.* (1995) 37 Cal.App.4th 1282, 1286, disapproved on other grounds in *Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 855, fn. 23.) Put another way: "Once the burden shifts as a result of the factually devoid discovery responses, the plaintiff must set forth the specific facts which prove the existence of a triable issue of material fact." (*Union Bank v. Superior Court* (1995) 31 Cal.App.4th 573, 590; see also *DiCola v. White Bros. Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 667-683; *McGonnell v. Kaiser Gypsum Co.* (2002) 98 Cal.App.4th 1098, 1104; 6 Witkin, Cal. Procedure (5th ed. 2008) Proceedings Without Trial, §§ 240-242, pp. 685-688 and further authority cited therein.)

Clearly, plaintiff Martinez did not meet this standard in his opposition to Neema's motion for summary judgment or in his brief to us. Thus, Martinez's "Separate Statement of Undisputed Material Facts in Opposition to Defendant's Motion for Summary Judgment," filed by him on June 8, consisted of 22 pages of allegedly "supporting evidence," but with, in actuality, little if any supporting evidence cited. Thus, most of these supposed statements of fact contain *no* citations to any evidence adduced during discovery; they are followed by two pages of nothing but citations to depositions, etc., but with absolutely no attempt to suggest what items of the voluminous evidence cited supports which of the previous factual assertions.

For example, the principal statement of undisputed fact asserted by Neema (No. 2 in this pleading) was that "Plaintiff's attempts to locate Defendant Neema relative to the subject emails and logins have failed; Neema was not present in any of the identified locations." Martinez's response to assertion No. 2—which he thereafter repeatedly cites to in his later "responses"—consists of approximately 14 pages of factual statements, which are then followed by two pages of citations to depositions and other discovery documents. But, notably, at no point does Martinez attempt to link the two, i.e., a reader of these pages has absolutely no idea which of the factual assertions are supported by

9

which of the evidentiary citations. Thus, this pleading totally fails to satisfy any rational test of an understandable opposition to a motion for summary judgment.

Martinez's brief to this court fares no better. Its first 24 pages consist of a statement of facts and a "Statement of Appealability." The first six pages of the "Discussion" portion discusses the *Bahl* case (discussed and distinguished, *ante*) and contends that that case supported his need for a continuance in the trial court. However, in none of these pages is there a single citation to the record; the only citations of any sort in those pages are to *Bahl* and one other case about the need for a " 'compassionate response to a request for a continuance.' " (Quoting *Lerma v. County of Orange* (2004) 120 Cal.App.4th 709, 714.) The next four-plus pages are devoted to the argument that the trial court's grant of summary judgment "is ambiguous" because it does not state whether its finding of "insufficient evidence" refers to the evidence plaintiff had already submitted or the evidence "Plaintiff did not have time to submit . . . [or] was ruled inadmissible by the court." But, again, Martinez cites to no evidence, in either category, which negated the trial court's ruling except its ruling—noted above—regarding the declaration of the reputed New York linguistics expert.

About 12 pages of "ARGUMENT" follow and, in them, plaintiff Martinez asserts no less than eight separate and distinct arguments regarding how the trial court erred in, e.g., denying his request for a continuance to introduce additional evidence, his request to introduce oral evidence at the hearing, and his request to amend his pleadings, and also denying admission of the declaration of the linguistics expert and in imposing costs on him. But, other than another citation to the declaration of linguistics expert Leonard, no evidence in the record is cited.

In sum, in neither his argument to the trial court nor his brief to us does Martinez cite any evidence (other than the declaration of Leonard which, as noted above, was excluded under section 2015.5) which, even slightly, supports his argument that there was tangible evidence in the record that Neema was, or even very possibly was, the author of the "phony" e-mails to Doane. We thus have no problem in sustaining the trial court's grant of summary judgment to Neema.

10

B.      *The Sanctions Award to Neema Is Supported By the Record*

The operative standard of review of a trial court's order either granting or denying sanctions against a litigant is abuse of discretion. (See, e.g., *Sabek, Inc. v. Engelhard Corp.* (1998) 65 Cal.App.4th 992, 1001, and cases cited therein; and *Kojababian v. Genuine Home Loans, Inc.* (2009) 174 Cal.App.4th 408, 422.) We find no such abuse of discretion by the court regarding its award of attorney fees and costs to Neema.

We affirm the trial court's order awarding attorney fees and costs to Neema in the amount of $5,155.15 because of Martinez's very obvious failure to follow the trial court's specific direction that he *not* name Neema as a defendant in Martinez's second amended complaint. Indeed, the trial court made its position on this subject clear to Martinez not once, but twice. The basis for these orders was the trial court's finding that Martinez, despite being given the opportunity, had failed to prove any tortious conduct by Neema. Martinez's failure to adhere to these very specific orders of the trial court establishes that it was clearly not an abuse of discretion for the trial court to award these sanctions against Martinez.

This disposes of Martinez's appeal, and we turn to that of Neema.

**Neema's Appeal**

C.      *The Trial Court's Denial of Discovery Sanctions to Neema Was Not an Abuse of Discretion*

As noted, after obtaining the summary judgment in his favor, Neema filed a motion for sanctions against Martinez based on his failure to admit that Neema was not involved in the e-mails sent to Doane. The specific background on this was that on or about March 29, 2010, about six weeks after Martinez had filed his original complaint and two weeks before he had filed his first amended complaint—in short, before the case was even at issue—Neema served a set of Requests for Admission on Martinez. The first two requests asked Martinez to admit that Neema "did not create email accounts in your name" and did not send the four e-mails attached to Martinez's complaint. The following month, Martinez filed denials of these two requests for admission.

11

Over a year and a half later, after the discovery and litigation described above and the trial court's order granting Neema's motion for summary judgment, Neema filed a motion for sanctions in the amount of $86,078.58, i.e., the "total amount of fees and costs incurred since the date of receipt of Plaintiff's denial of the above-quoted Requests for Admission." Neema's motion was based on section 2033.420, which essentially provides that if a responding party fails to admit something which the propounding party later proves to be true, the propounding party may move the court to order the responding party to pay reasonable expenses incurred in making that proof, including reasonable attorney's fees. And the section expressly provides that "(b) The court shall make this order unless it finds any of the following: . . . [¶] (3) The party failing to make the admission had reasonable ground to believe that that party would prevail on the matter. [¶] (4) There was other good reason for the failure to admit."

On November 17, 2011, Martinez filed his opposition to that motion, which opposition included a declaration of Martinez and several attachments. The motion was heard on December 1, 2011, before Judge Broderick, who had been involved in the litigation since before the motion for summary judgment was heard. Judge Broderick heard extensive argument on the motion, as discussed in detail below. On December 15, he entered an order denying Neema's request for sanctions. In so doing, he stated: "Although the Court ultimately granted the motion for summary judgment in favor of defendant Neema, it does not necessarily follow that the plaintiff did not have a 'reasonable good faith belief' that he would be able to prove his theories of liability against Neema at trial." Judge Broderick then cited and discussed two cases arising under the governing statute where sanctions *had been* awarded, but noted that in both there was no arguable issue (because of expert testimony developed in the course of the litigation) about the presence or absence of liability.[7] He then concluded his opinion

_____

[7] Those cases are *Garcia v. Hyster Co.* (1994) 28 Cal.App.4th 724 (*Garcia*) and *Barnett v. Penske Truck Leasing Co.* (2001) 90 Cal.App.4th 494 (*Barnett*). Both cases were cited to the trial court by Neema and, as noted, were specifically addressed and distinguished by both its tentative decision and its formal ruling. Indeed, the facts and

denying the requested sanctions by stating: "The test is not whether Mr. Martinez was ultimately able to prove his theories. Rather, the test is whether at the time the plaintiff refused to admit [the] request for admissions he held a reasonable good faith belief that he would prevail at trial on those issues," citing, in support of his conclusion, the case of *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1277 (*Laabs*).

In *Laabs*, the Fourth District affirmed a denial of a request for sanctions under section 2033.420. In so doing, it first noted that, under that statute, a court should not award sanctions if it finds that " 'the party failing to make the admission had reasonable ground to believe that that party would prevail on the matter.' " (*Laabs, supra,* 163 Cal.App.4th at p. 1276.) The opinion then concluded that, in the case before it, the trial "court could have easily concluded that at the time plaintiff refused to admit such matters she reasonably held a good faith belief that she would prevail at trial on these issues. Therefore, the court did not abuse its discretion in denying the City's motion with respect to these matters." (*Id.* at p. 1277.)

The *Laabs* court cited and relied upon an earlier decision interpreting and applying the predecessor statute to section 2033.420, subdivision (b): *Brooks v. American Broadcasting Co.* (1986) 179 Cal.App.3d 500 (*Brooks*). In *Brooks*, Division Four of this court affirmed a trial court's order partially granting and partially denying a motion seeking expenses incurred by defendants in a personal injury case after the plaintiff had denied two specific requests for admission. The holding of *Brooks* which the *Laabs* court found particularly pertinent to the issue before it was this: "In evaluating whether a 'good reason' exists for denying a request to admit, 'a court may properly consider

holdings of both cases also support the trial court's discretionary ruling here. In *Garcia,* the request for admission was served 21 months after the complaint was filed and after the completion of much discovery, including that which demonstrated employer negligence. Despite that, the party which would be adversely affected by that evidence denied employer negligence. In *Barnett,* the plaintiff later admitted that the accident had not occurred as he had stated, and on which his earlier denial of the request for admission was based. Here, by contrast, the request for admission was filed and answered almost immediately after the original complaint was filed; in the interim, Martinez never changed his version of events.

13

whether at the time the denial was made the party making the denial held a reasonably entertained good faith belief that the party would prevail on the issue at trial.' " (*Laabs, supra,* 163 Cal.App.4th at p. 1276, quoting *Brooks, supra,* 179 Cal.App.3d at p. 511.)

As both the *Laabs* and *Brooks* decisions confirmed, our standard of review of such a ruling by the trial court is abuse of discretion. (See also *Wimberly v. Derby Cycle Corp.* (1997) 56 Cal.App.4th 618, 637, fn. 10.) It is not, even in part—as Neema contends in his brief to us—de novo review.[8] And we find no abuse here.

The record demonstrates that Judge Broderick considered this issue carefully, both prior to oral argument, when he had issued a tentative decision, and at the hearing. Thus, for example, in the discussion of this tentative holding with counsel for Neema at oral argument, Judge Broderick first noted that the fact that, long after the filing of the requests for admission by Neema and their denial by Martinez (both in early 2010), the grant of Neema's motion for summary judgment (in August 2011) involved "two separate situations" and "two distinct time periods," thus suggesting that "a different analysis" is required regarding the reasonableness of Martinez's denial of the requests for admission and his later opposition to Neema's motion for summary judgment.

This observation provoked a questioning response from Neema's counsel that "what we're supposed to be asking is what is the reasonable basis for his belief?" In responding to that question, Judge Broderick first noted that a declaration filed by Martinez specified (1) several conversations between the parties as to the various controversial e-mails, (2) the fact that Ms. Doan [*sic*] had not "obtained an order to stay away," and (3) "the declaration of this Robert Leonard Ph.D."[9] In addition, the record

---

[8] In support of this assertion, Neema cites *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799, but that case did not address at all the standard of review of a trial court order regarding the award or denial of sanctions under section 2033.420—or any other statute.

[9] The trial court was possibly referring to the fact that Martinez's earlier filings in support of his motion for reconsideration of the trial court's grant of summary judgment included a revised version of the Leonard declaration, this time verified in California, but substantively the same. It may also have considered the fact that, along with that filing, Martinez requested the trial court to allow him to take the deposition of Leonard.

14

included Martinez's declaration that had been submitted in opposition to the motion for summary judgment which testified to some events that had occurred before he had filed this lawsuit—and of which he was aware at the time he denied the requests for admission early in this lawsuit.[10]

Judge Broderick then went on to note that in *Laabs* the trial court "did not make a finding" as to the truth or not of the specific request for admission. And, he continued: "In that matter, the party had held a good faith belief. The appellate court even goes further and says the court could have concluded that at the time the plaintiff refused to admit such matters, she held a good faith belief that she would prevail at trial on these issues. I agree with you as we both talked about these cases there is not a lot of cases that articulate what that code section means. I was surprised to see how far this appellate court was willing to extend this analysis. The trial court did not even make that specific finding. The appellate court says but the trial could have, so there is not going to be sanctions issued. They go on to clarify that it is her reasonably held good faith belief that she would prevail not that a reasonable person or reasonable attorney."

After a response to this from Neema's counsel, Judge Broderick suggested that, even if there is later a defense verdict, the defendant is not "automatically entitled to attorney fees." Rather, "The analysis is at the time they denied the request for admission, what was taking place at that time." Neema's counsel responded by inquiring, "[I]f the case is dismissed on the ground of absolutely no evidence whatsoever, then how can you say at any time there was an objectively reasonable belief that he'd win?" And Judge Broderick responded: "It is not whether I would have had an objective reasonable belief

---

[10] For example, Martinez testified that: "1. Defendant Neema approached me a few weeks before the first impersonation and was noticeably upset that Ms. Doane had not obtained and [*sic*] order or a stay away agreement against me. [¶] 2. In addition to being noticeably upset, in the same conversation defendant Neema asked me questions about Doane's estranged husband, such as where he worked and lived and what he did for a living. . . . [¶] 3. A few weeks after the conversation in which defendant Neema asked me about Doane's estranged husband, Mr. Doane received the first email impersonation which included many of the details that defendant had learned from our previous conversations."

or whether you or your client would have. The Labbs [sic] case makes it clear it is what that party's reasonable belief [is]. In the Labbs [sic] case, it doesn't talk about whether they had sufficient evidence. It doesn't talk about whether they had the witnesses and documents to prove their case. They talk about whether the plaintiff held a good faith belief that she would prevail at trial on these issues."

After a few further comments by both Neema's counsel and Martinez, Judge Broderick reaffirmed his ruling denying Neema's request for expenses in proving his case, stating: "[T]he court looks to the appellate courts and their interpretation of the statute for guidance. In this matter the court has identified just by way of a couple of examples. The court's finding that Mr. Martinez at the time he denied the request for admission held a reasonable good faith belief that he would prevail at trial. Again whether he ultimately does so is not the issue or whether others would agree with him that he had the basis to hold that belief is not the issue. It is a reasonable person's standard. It's the standard of the person who is sitting down reading the request for admission and denying it. Therefore the court will deny the request for sanctions."

Neema argues that Judge Broderick abused his discretion when he applied "a Subjective Standard of Reasonableness" to evaluate Martinez's belief that he would prevail at trial. He argues that such should be evaluated based on an objective view of the reasonableness of Martinez' belief that he would prevail. In other words, as we understand the argument, the test must be an objective one. This is clearly the view of our dissenting colleague, who urges that some opinion must come out and point blank say so. We disagree.

As our colleagues pointed out in *Brooks, supra*, 179 Cal.App.3d at page 508, "With the exception of several minor, nonsubstantive language revisions, section 2034, subdivision (c), has remained the same since it was enacted as part of the Discovery Act in 1957. (Stats. 1957, ch. 1904, § 3, p. 3336.)" The statute says what it says, and apparently has served its purpose well, yielding a grand total of two cases in 55 years. Put otherwise, courts apparently have not had much trouble applying the language of section 2033.420, subdivision (b): whether the responding party had reasonable ground

16

that it might prevail. As the leading practical treatise puts it, the "responding party may avoid sanctions by establishing that it had a *reasonable basis* for believing it would prevail on the issue at time of trial, and relied thereon in denying the RFA. [Code Civ. Proc., § 2033.420, subd. (b)(3).] [¶] The responding party must show that at the time of denial, it held a *reasonably entertained* (i.e., based on admissible evidence) *good faith belief* that it would prevail on the issue at trial. [See *Laabs, supra,* 163 Cal.App.4th at p. 1276.]" (Weil & Brown, Cal. Practice Guide: Civil Proc. Before Trial (The Rutter Group rev. #1 2012) ¶ 8:1408, p. 8G-39.)

Here, Judge Broderick concluded that "[A]t the time [Martinez] denied the request for admission [he] held a reasonable good faith belief that he would prevail at trial. Again whether he ultimately does so is not the issue or whether others would agree with him that he had the basis to hold that belief is not the issue. It is a reasonable person's standard." The two most applicable authorities, *Laabs* and *Brooks*, clearly support this view, as they make clear that the test is whether the denier of the request for admission held a good faith belief in the substance and basis of his denial.[11] Here, as discussed at length above, Judge Broderick carefully followed the law as set forth in *Laabs.* That is what he was compelled to do. (See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.) It was hardly an abuse of discretion.

Judicial discretion has been described as "the sound judgment of the court, to be exercised according to the rules of law." (*Lent v. Tilson* (1887) 72 Cal. 404, 422.) This

---

[11] The *Brooks* court, in the denial of sanctions regarding one request for admission framed the issue even more narrowly, i.e., whether the denying party "had a sufficiently good reason to deny request No. 51." (*Brooks, supra,* 179 Cal.App.3d at pp. 512-513.) And, unlike our dissenting colleague, we find nothing in either *Laabs* or *Brooks* which "stand squarely for the proposition that ' "the reasonableness that justifies a party's refusal to admit a request for admissions under section 2033.420 is objective." ' " (Dis. opn. at p. 4.) Our review of those opinions discloses that neither the words "objective" or "subjective" were used therein. Rather, and as noted above, both opinions repeatedly stated that the test was whether the party denying the requests for admission entertained, at the time of the denial, that such was based on a "good faith belief." Which was precisely the standard relied upon by the trial court in its order here.

" 'implies absence of arbitrary determination, capricious disposition or whimsical thinking.' " (*In re Cortez* (1971) 6 Cal.3d 78, 85.)  We discussed the concept in *People v. Jacobs* (2007) 156 Cal.App.4th 728, 736:  "Various definitions and principles describing the abuse of discretion standard of review have been stated and repeated in numerous cases, such as in *Blank v. Kirwan* (1985) 39 Cal.3d 311, 331, that we will set aside a trial court ruling only upon a showing of ' " 'a clear case of abuse' " ' and ' " 'a miscarriage of justice.' " '  As to what is required to show such abuse, it has been said that a trial court abuses its discretion only when its ruling ' " 'fall[s] "outside the bounds of reason." ' " [Citation.]' (*People v. Benavides* (2005) 35 Cal.4th 69, 88; accord, *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566 [abuse of discretion requires a showing that the trial court ' "exceed[ed] the bounds of reason, all of the circumstances before it being considered" '].)  More colorfully, it has been said that discretion is abused only when the trial court' s ruling is arbitrary, whimsical, or capricious.  (*People v. Linkenauger* (1995) 32 Cal.App.4th 1603, 1614; *People v. Branch* (2001) 91 Cal.App.4th 274, 282; see *People v. Giminez* (1975) 14 Cal.3d 68, 72 [' "capricious disposition or whimsical thinking" '].)"  We would be hard pressed to apply any of those adjectives to Judge Broderick here.

## IV. DISPOSITION

The judgment and orders of the trial court are all affirmed.

_____
Haerle, J.

I concur:

_____
Richman, J.

18

Concurring and dissenting opinion of Kline, P.J.

I concur in all portions of the majority opinion save that sustaining the trial court's order denying Neema discovery sanctions against Martinez.

The chief claim Neema advances in his appeal is that, as he titles the argument in his opening brief, "The Trial Court Abused its Discretion When it Applied a Subjective Standard of Reasonableness to Measure Martinez'[s] Belief That He Would Prevail at Trial." According to appellant, the trial court reasoned that as long as Martinez *genuinely believed* that his belief he could establish Neema impersonated him online was reasonable, "that was the end of the inquiry." Appellant says this is not the standard, and applying it "was an abuse of the trial court's discretion," as the subjective test the court employed "essentially eviscerates the remedy provided for in [Code of Civil Procedure section] 2033.420." As appellant says, "[a]ny party facing sanctions would only have to say that he thought his belief that he would prevail was reasonable when he denied the requests for admissions, no matter how unsupported that belief may have been by any evidence."

Unfathomably, my colleagues refuse to candidly address this central claim or even acknowledge that the trial court applied a subjective test, as I believe it clearly did, which was a manifest abuse of discretion.

The majority states that Code of Civil Procedure section 2033.420, subdivision (b)(3)[1] "says what it says, and apparently has served its purpose well, yielding a grand total of two cases in 55 years. Put otherwise, courts apparently have not had much trouble applying the language of [that statute]: whether the responding party had reasonable ground that it might prevail. As the leading practical treatise puts it, the 'responding party may avoid sanctions by establishing that it had a *reasonable basis* for

_____

[1] All undesignated statutory references are to the Code of Civil Procedure.

1

believing it would prevail on the issue at time of trial, and relied thereon in denying the RFA. [Citation.] [¶] The responding party must show that at the time of denial, it held a *reasonably entertained* (i.e., based on admissible evidence) *good faith belief* that it would prevail on the issue at trial. [Citations.]" (Maj. opn. at p. 17.)

Of course section 2033.420 "says what it says," as do all statutes; and it makes sense only if reasonableness is to be assessed objectively. Courts have had "no trouble" applying the language of the statute because it would be virtually useless if the standard of reasonableness were subjective, and all that was required to avoid sanctions was a good faith belief one would prevail. The statute has yielded "a grand total of two cases in 55 years" (maj. opn. at p. 16) (both of which apply an objective standard) only because the proper standard, which has never been disputed, is so obvious that appellate courts were not called upon to explicitly confirm it. Moreover, neither *Labs v. City of Victorville* (2008) 163 Cal.App.4th 1242 (*Labs*), nor *Brooks v. American Broadcasting Co.* (1986) 179 Cal.App.3d 500 (*Brooks*), nor any other case, has ever said, as do my colleagues, that the test is merely that the denier of the request for admission held a good faith belief in the substance and basis of his denial (maj. opn. at p. 17, and fn. 11), which, as the majority acknowledges, "was precisely the standard relied upon by the trial court in its order here" (maj. opn. at p. 17, fn. 11).

It is a complete mystery to me why the majority is unwilling to state that the standard of reasonableness *must* be objective; recognize that a subjective standard was improperly applied in this case; and simply remand the matter to the trial court to apply the proper standard.

The majority avoids the simple issue Neema presents by theorizing that the trial court found Martinez's belief he would prevail at trial reasonable on the basis of admissible evidence referred to in the declaration Martinez submitted in opposition to Neema's motion for sanctions. As will be seen, the trial court made no such evidentiary finding; indeed, the *only* explanation given by the trial court for its reasonableness

2

determination was that Martinez's subjective belief he would prevail was held in good faith, and under *Laabs* that was a sufficient basis upon which to deny Neema's motion for sanctions.

## I.

The majority's attempt to obscure the trial court's application of a subjective standard fails. Early on at the hearing on Neema's motion for sanctions, the court indicated that, in its view, the opinion in *Laabs, supra,* 163 Cal.App.4th 1242, required only "that at the time the plaintiff refused to admit such matters, she had a good faith belief that she would prevail at trial . . . ." Though some of the court's language is confusing, one thing is clear: in the mind of the court, a good faith belief was sufficient to prevent an award of sanctions, even if it was not based on a "reasonable ground," i.e., objectively unreasonable. For example, noting that although the plaintiff in *Laabs* was deemed to have held a good faith belief she would prevail at trial," the trial court expressed "surprise[]" at "how far this appellate court was willing to extend this analysis," because it went on "to clarify that it is *her* reasonably held good faith belief that she would prevail, *not that [of] a reasonable person or reasonable attorney*." (Italics added.) As the court stated, the issue "is not whether I would have had an objective reasonable belief or whether your client would have [such a belief]." According to the trial court, "whether others would agree with [Martinez] that he had the basis to hold that belief is not the issue," because the standard is that "of the person who is sitting down reading the request for admission and denying it."

A subjective test of reasonableness is supported neither by reason nor the text of the pertinent statute, which requires the party failing to make the admission to have a "*reasonable ground* to believe that that party would prevail on the matter." (§ 2033.420, subd. (b)(3), italics added.) If reasonableness need not be objective, and a good faith belief sufficed to bar sanctions, fools would be franchised.

3

According to the majority, "nothing in either *Laabs* or *Brooks*" stands for the proposition that " 'the reasonableness that justifies a party's refusal to admit a request for admissions under section 2033.420 is objective.' " (Maj. opn. at p. 17, fn. 11.) They have not read the opinions carefully.

*Laabs* is instructive in several ways.

In that case, a passenger in a car injured in a collision sued a city alleging her injuries were caused by a dangerous condition of public property under Government Code sections 830 and 835. She argued that the placement of a light pole too close to the roadway contributed to the severity of her injuries. The trial court granted the city's motion for summary judgment and subsequently denied the city's motion for defense costs under section 1038, and for expenses incurred in proving matters that the passenger had denied as discovery sanctions under section 2033.420. (*Laabs, supra,* 163 Cal.App.4th 1242.)

Section 1038, which is similar in some respects to section 2033.420, provides that in certain proceedings, the court, on motion of the defendant, shall, at the time of granting various forms of summary relief, "determine whether or not the plaintiff . . . brought the proceeding with reasonable cause and in good faith belief there was a justifiable controversy under the facts and law which warranted the filing of the complaint . . . . If the court should determine that the proceeding was not brought in good faith and with reasonable cause . . . the court shall render judgment in favor of [the defendant] in the amount of all reasonable and necessary defense costs, in addition to those courts normally awarded to the prevailing party." (§ 1038, subd. (a).) Referring to this statutory language, and citing cases, the *Laabs* court stated that in order to deny a motion for fees under section 1038, "the court must find the plaintiff brought or maintained the action (1) in the good faith belief in the action's justifiability, and (2) *with objective reasonable cause*." (*Laabs, supra*, 163 Cal.App.4th at p. 1271, italics added.)

4

The issue in *Laabs* with respect to section 1038 arose from the fact that the trial court had not expressly found that the plaintiff acted "in the good faith belief in the actions justifiability" and "with objective reasonable cause," and identified the basis of the reasonable belief. (*Laabs, supra*, 163 Cal.App.4th at p. 1271.) Therefore, one of the issues in the case was whether the requirement that "that the court *make* the required good faith and reasonable cause determinations [means] that the court is further required to *explicitly state* such determinations in the record." (*Id.* at p. 1272.) The court answered the question in the negative, stating: "Although the court did not *expressly* state its finding regarding the issues involved in the motion, neither the statute nor other authority required it to do so. Thus, based upon the doctrine of implied findings and the fundamental rules of appellate review upon which it is based we are required to infer any factual determinations necessary to support the order." Over the dissent of Justice Hollenhorst, the *Laabs* majority simply inferred that the trial court had determined "that that action was brought in good faith and reasonable cause" (*id*. at p. 1273), and on the basis of that inference concluded that the city's motion for fee under section 1038 was properly denied.

The *Laabs* court then turned its attention to section 2033.420, the statute of concern here. The plaintiff opposed the city's motion for sanctions under that statute on the ground that the admissions sought were not matters of substantial importance (§ 2033.420, subd. (b)(2)) and, if they were, that she " 'had good reason to deny several of the requests.' " (*Laabs, supra*, 163 Cal.App.4th at p. 1276; § 2033.420, subd. (b)(3).) As in applying section 1038, the trial court applied section 2033.420 without making any explicit findings whether, as the plaintiff claimed, the claims were either "of no substantial importance" to the case, or the plaintiff "had reasonable ground to believe [she] would prevail on the matter." Also over the dissent of Justice Hollenhorst, the majority solved this problem by imputing the requisite findings to the trial court. With respect to three of the requested admissions, the *Laabs* majority determined that "[t]he

5

trial court *could* reasonably have concluded that [said admissions] were not central to the disposition of the case" (*Laabs, supra*, 163 Cal.App.4th at p. 1276, italics added), and that, with respect to the remaining requested admissions, the trial court "*could* have easily concluded" that the plaintiff "reasonably held a good faith belief that she would prevail at trial on these issues." (*Id*. at p. 1277, italics added.)

Justice Hollenhorst dissented from the orders applying sections 1038 and 2033.420 "[b]ecause the trial court failed to state whether or not it had found that Plaintiff brought or maintained her action in the good faith belief in the action's justifiability and with objective reasonable cause" (*Laabs, supra*, 163 Cal.App.4th at p. 1290, dis. opn. of Hollenhorst, Acting P.J.) and without "stating any reasons." (*Id*. at p. 1291, dis. opn. of Hollenhorst, Acting P.J.)

As the trial court in this case also made no express factual findings—apparently interpreting *Laabs* as relieving it of that responsibility—my colleagues, like the *Laabs* majority, fill the void by *implying* the requisite finding. *Laabs* does not, however, justify use of the doctrine of implied findings in the circumstances of this case, which are very different from those in *Laabs*.

In *Laabs* the trial court provided no reason to think its determination was based on an erroneous (i.e., subjective) standard of reasonableness, and under fundamental rules of appellate review, the reviewing court was therefore justified in assuming it applied the correct standard. In this case, however, as the previously quoted language of the trial court makes clear, the court applied an erroneous standard. Fundamental rules of appellate review and the doctrine of implied findings *cannot* be used to sustain such an abuse of discretion.

In short, *Laabs* does not, as my colleagues claim, "clearly support" their opinion; and neither does *Brooks, supra,* 179 Cal.App.3d 500, which they also rely upon. *Brooks* simply says, in language quoted in *Laabs*, that in determining whether a "good reason[]" exists for denying a request to admit, "a court may properly consider whether at the time

6

the denial was made the party making the denial held a *reasonably entertained* good faith belief that the party would prevail on the issue at trial." (*Id*. at p. 511, italics added.) *Laabs* and *Brooks* both squarely stand for the unremarkable proposition that the reasonableness that justifies a party's refusal to admit a request for admissions under section 2033.420 is objective. The fact that neither *Laabs* nor *Brooks* uses the word "objective" or "subjective" provides no reason to think, as do my colleagues, that a subjective standard is appropriate. (See maj. opn. at p. 17, fn. 11.)

Because the trial court's application of a subjective standard of reasonableness constituted a manifest abuse of discretion, I would remand the matter to the trial court for reconsideration of Neema's motion for sanctions pursuant to the proper, objective, standard of reasonableness.

## II.

The majority's reasons for affirming the denial of sanctions do not stand up to scrutiny. Though unclear, the majority opinion appears to uphold the trial court's ruling on two grounds: First, that Martinez denied the two requests for admissions very early in the litigation, before he had time to seek and obtain discovery; second, that the trial court relied on factors Martinez identified in his declaration in opposition to Neema's motion, which provided a reasonable basis upon which Martinez could believe he would be able to show that Neema injuriously impersonated him online.

The trial court did not rely on either of these factors, and neither stands up to scrutiny.

The first factor ignores the lengthy discovery and other investigations of Neema undertaken by Martinez, or others acting at his request, *long before* he filed this action against Neema. As for the Martinez declaration, the record fails to show that any of Martinez's factual representations played any role in the trial court's denial of Neema's motion for sanctions. I address the two factors in turn.

7

## A.

Preliminarily, it is clear that "[a] party responding to requests for admissions has a duty to make a reasonable investigation to ascertain the facts even though the party has no personal knowledge of the matter when the party has available sources of information as to the matters involved in such requests for admissions. [Citations.] Thus, if a party denies a request for admission (of substantial importance) in circumstances where the party lacked personal knowledge but had available sources of information and failed to make a reasonable investigation to ascertain the facts, such failure will justify an award of expenses under section 2034, subdivision (c)." (*Brooks, supra*, 179 Cal.App.3d at p. 510.) Moreover, as Justice Sabraw pointed out in *Brooks*, it is not "enough for the party making the denial to 'hotly contest' the issue. . . . there must be some reasonable basis for contesting the issue in question before sanctions can be avoided." (*Id*. at p. 511.)

There are, however, circumstances in which a requested admission may be reasonably denied even though hindsight shows it to be unreasonable. Thus, very early in litigation, before significant discovery has been undertaken, it is ordinarily possible for a plaintiff to reasonably believe he would be able to adduce evidence that would support his assertions though subsequent developments show the belief to have been unreasonable. A plaintiff should be provided some time in which to produce such evidence. As has been said, "[s]ometimes a party justifiably denied a request for admission based upon the information available at the time of the denial, but later learns of additional facts or acquires information which would have called for the request to be admitted if the information had been known at the time of the denial. If such a party thereafter advises the party that propounded the request for admission that the denial was in error or should be modified, a court should consider this factor in assessing whether there were no good reasons for the denial." (*Brooks, supra,* 179 Cal.App.3d at p. 510, fn. omitted, citing *Garrison v. Warner Brothers Pictures* (9th Cir. 1955) 226 F.2d 354, 356.)

8

There are, however, no such extenuating circumstances here.

As the majority explains, Neema's motion for sanctions was based on Martinez's refusal to admit that Neema "did not create e-mail accounts in [his] name," and "did not send the e-mails attached as Exhibits A, B, C, and D to [his] complaint." As the trial judge knew, with the help of a private investigator and an attorney, Martinez had been diligently investigating Neema's online conduct for more than a year before he filed the present action. Much of his investigation was conducted in the form of discovery in a judicial proceeding relating in some ways to this one. Before he commenced this lawsuit, Martinez had been sued by Kimberley Doane for harassment. In defending himself against Doane's claims (some of which he felt should have been made against Neema), Martinez took Neema's deposition, and in February and June of 2009—a year before he filed the complaint herein—Martinez filed deposition subpoenas for the production of business records from Neema's internet service provider, Yahoo, seeking disclosure of any internet accounts possibly maintained or used by Neema to impersonate Martinez in e-mails to Doane. The voluminous information Martinez obtained from these and other efforts, which was filed with the trial court in this case in connection with Neema's motion for summary judgment, demonstrably failed to show either that Neema created e-mail accounts in Martinez's name, or that Neema sent Doane the e-mails attached to Martinez's complaint, or to corroborate any of Martinez's other suspicions regarding Neema's online activities.

The information Martinez possessed before he sued Neema was alone sufficient to provide a reasonable person in his position substantial reason to appreciate and acknowledge his inability to show that Neema created e-mails in his name or sent the e-mails attached to Martinez's complaint, which was necessary in order for him to prevail in this action.

But there is more. Prior to the time Neema requested the admissions at issue, Martinez had been authoritatively informed by multiple knowledgeable public agencies

9

that his prodigious efforts to establish that Neema had impersonated him online had failed and were not worth pursuing.

In April and May 2009, Martinez provided the District Attorney of Marin County and the San Anselmo Police Department all of the information he and his private investigator had obtained from Yahoo and other sources assertedly supporting Martinez's theory that Neema had created e-mail accounts in Martinez's name which he had used to send Kimberley Doane the four e-mails attached to Martinez's complaint. After reviewing the information, both agencies concluded that the information provided no support for Martinez's suspicions nor even warranted further investigation.

The San Anselmo Police Department prepared a six-page single-spaced analysis of Martinez's evidence. After concluding that "there is no concrete evidence linking any of the persons on the list that Martinez provided, particularly Neema, who Martinez suspects was the main culprit in this case," the police department informed Martinez that "there is no more the Law Enforcement community can do in regards to your case until evidence is produced that links Neema or another suspect to the crime. . . . [¶] If at any time in the future, you can provide evidence that links Neema or another person to this crime I would be more than willing to revisit the case . . . . Martinez never provided any such evidence, and the police never conducted any further investigation.

After Martinez complained about the police department's adverse conclusion, the department gave the information Martinez had assembled to the Northern California Computer Crimes Task Force for its independent review. After reviewing the information given Martinez by Yahoo, and other information Martinez had produced, the Chief Inspector for the Task Force, Carl Chapman, agreed that the materials not only failed to show any evidence Neema had impersonated Martinez online, but failed to justify any further investigation of the allegation.

Although this is a civil, not a criminal proceeding, Martinez could not prevail in this action without the evidence Neema asked him to admit he was unable to acquire after

10

conducting a year-long investigation with the assistance of a private investigator and an attorney, and use of the judicial discovery process.

In short, as the trial court was aware, at the time he denied Neema's requests for admissions, Martinez had long known that multiple law enforcement agencies, including one specializing in computer crime, considered his prolonged efforts to inculpate Neema quixotic. Martinez's consistent inability, despite monumental efforts, to produce such evidence would have led a reasonable person to conclude he could *not* prevail in this civil action for online defamation.

**B.**

The majority refers to the fact that at the hearing on Neema's motion for sanctions, the trial court referred to Martinez's declaration in opposition to the motion. (Maj. opn. at pp. 14-15.) The trial court statement referenced by the majority is as follows: "[Martinez] talks about Mr. Neema approaching him a few weeks before the first impersonation. He thinks Mr. Neema is upset that Ms. Doan[e] has not obtained an order to stay away. He goes further on to talk about a few weeks after this conversation, Ms. Doan[e] received the first e-mail impersonation. He then goes on to talk about the e-mails and then he goes on to talk about the declaration of this Robert Leonard Ph.D." [2] The majority treats the matters adverted to by the court in the statement just quoted as identifying the factual bases for its denial of Neema's motion. This is not the case. First of all, the court was clearly just summing up Martinez's position; it was not making findings. Moreover, the court never bothered to assess the probative value, if any, of the

---

[2] Essentially, Dr. Leonard states in his declaration that his "preliminary analysis of [Neema's] known writing" compared with a single "e-mail impersonation" led him to believe that a more thorough and complete analysis of other unidentified writings might have been composed by the same person who composed another e-mail known to have been sent to a third party by Neema. So far as the record shows, Dr. Leonard never undertook the "thorough and complete analysis of the writings" he considered necessary to test this hypothesis.

11

factors mentioned in Martinez's declaration. Indeed, the court never made *any* factual findings in support of its ruling on the motion, save that Martinez's (subjective) belief he would prevail was held in good faith. The reason the court granted the motion was essentially *legal*, not factual.

Immediately after summing up Martinez's declaration, the court commenced an extended discussion of the *Laabs* opinion indicating that, in its view, the question was *not* the reasonableness of the various factors Martinez gave for believing he would prevail, but the good faith in which he held that belief. The court began by stating that "what I found interesting about the [*Laabs*] case is the appellate court notes that the trial court did not make a finding. In that matter, the party held a good faith belief. The appellate court even goes farther and says the [trial] court could have concluded that at the time the plaintiff refused to admit such matters, she held a good faith belief that she would prevail at trial on these issues. . . . I was surprised to see how far this appellate court was willing to extend this analysis. The trial court did not even make that specific finding [of reasonableness]. . . . [because] it is *her* reasonably held good faith belief that she would prevail not that [of] a reasonable person or reasonable attorney."

When counsel for Neema rhetorically asked "how can you say at any time there was an objectively reasonable belief that he'd win?" the court responded: "It is not whether I would have had an objective reasonable belief or whether you or your client would have. The [*Laabs*] case makes it clear it is what that party's reasonable belief [*sic*]. In the [*Laabs*] case, it doesn't talk about whether they had sufficient evidence. It doesn't talk about whether they had the witnesses and documents to prove their case. They [only] talk about whether the plaintiff held a *good faith belief* that she would prevail at trial on these issues." (Italics added.)

After further discussion, and hearing Martinez's response to Neema's motion, (which response never referred to the Leonard declaration), the court denied Neema's motion and made clear that it did so in reliance on "the appellate courts and their

12

interpretation of the statute" and specifically the "[*Laabs*] versus City of Victorville case." Under *Laabs*, the court reiterated, "whether others would agree with [Martinez] that he had a basis to hold that belief is not the issue" because the standard is not that of an objectively reasonable person, but "the standard of the person who is sitting down reading the request for admission and denying it."

In short, the court did not deny Neema's motion for sanctions on the basis of the Leonard declaration or any of the other factors mentioned in the Martinez declaration, but on the basis of the conclusion that Martinez's belief he would prevail was maintained in good faith. The two-page order denying Neema's motion for sanctions, which makes no reference to the matters set forth in the Martinez declaration, consists entirely of a discussion of the case law, and makes clear the court's reliance solely on its view that, under *Laabs* and *Brooks*, the test is whether, at the time of the denial of requested admissions, the party denying the request had a good faith belief. My colleagues share that view. (Maj. opn. at p. 17, fn. 11.) As indicated, I believe it makes a mockery of section 2033.420, subdivision (b)(3).

### III.

The trial court's application of a subjective standard of reasonableness constitutes not only an abuse of discretion but results in unfairness.

The proceedings initiated and maintained by Martinez in the trial court in propria persona, his conduct in that court during a period of two years, and his appeals to this court from the rulings granting Neema summary judgment and sanctions, which border on the frivolous, reflect a desire to establish Neema's involvement in a conspiracy to defame that—so far as the record shows—exists only in Mr. Martinez's imagination. But there is nothing imaginary about the costs Neema was forced to bear as a result of Martinez's indefatigable pursuit of his claims, which he had good reason to know were unsustainable at the outset. The prodigious memoranda, requests for discovery, declarations, supplemental declarations, requests for reconsideration, requests for judicial

13

notice, requests to accept late papers, and numerous other pleadings repeatedly filed by Martinez over the years, almost all of which were unavailing, compelled Neema to engage counsel who billed him $113,166.43 for fees and costs; considerably more than the $86,078.85 he sought to recover.

Neema has established a right to have his request for reimbursement of these costs evaluated under the proper legal standard. The primary purpose of requests for admissions is to provide an incentive to set at rest triable issues so that they will not have to be tried, and thereby expedite trial. (*Cembrook v. Superior Court* (1961) 56 Cal.2d 423, 429.) The basis for imposing sanctions under section 2033.420 is related to that purpose. "Unlike other discovery sanctions, an award of expenses pursuant to [then] section 2034, subdivision (c) [the predecessor to present section 2033.420] is not a penalty. Instead it is designed to reimburse reasonable expenses incurred by a party in proving the truth of a requested admission where the admission sought was 'of substantial importance' [citations] such that trial would have been expedited or shortened if the request had been admitted." (*Brooks, supra*, 179 Cal.App.3d at p. 509.)

It is in my view unjust to deprive Martinez's innocent victim of the possibility of diminishing the economic pain he was unjustifiably obliged to bear.

For the foregoing reasons, I respectfully dissent from that portion of the opinion sustaining the denial of Neema's request for discovery sanctions. I would remand the case to the trial court with directions to determine whether, at the time he refused to admit Neema's request for admissions, Martinez held an objectively reasonable belief he would prevail at trial on the pertinent issues.

_____

Kline, P.J.

14